[Cite as *Kettering v. Mosher*, 2019-Ohio-1549.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF KETTERING | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28055 |
| | : | |
| v. | : | Trial Court Case No. 2011-CRB-1415 |
| | : | |
| EDWARD D. MOSHER | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of April, 2019.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, 2325 Wilmington Pike, Kettering, Ohio 45420
 Attorney for Plaintiff-Appellee

BRIAN D. BRENNAMAN, Atty. Reg. No. 0088988, 1616 Turner Road, Xenia, Ohio 45385
 Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court denied his motion to dismiss, Edward D. Mosher pled no contest in Kettering Municipal Court to an amended charge of disorderly conduct, a fourth-degree misdemeanor. The trial court imposed a sentence of 30 days in jail, all of which was suspended, and a $250 fine, $240 of which was suspended, plus court costs. The court also imposed five years of unsupervised probation, which included an order that Mosher pay restitution totaling $3,000, to be made in monthly installments of $50 to the Kettering Tax Department, beginning August 1, 2018. The trial court stayed the fine and court costs pending appeal.

{¶ 2} Mosher appeals from his conviction, raising four assignments of error. He claims that the trial court should have dismissed his case on statute of limitations grounds, that he was denied a speedy trial, that the trial court erred in allowing his prior counsel to testify at the hearing on his motion to dismiss, and that his trial counsel rendered ineffective assistance. For the following reasons, the trial court's judgment will be reversed, and Mosher's conviction will be vacated.

## I. Factual and Procedural History

{¶ 3} On July 13, 2011, the City of Kettering filed a criminal complaint against Mosher, as the responsible officer for Kettering Automotive Service Center, Inc. The complaint alleged that, on or about April 25, 2011, Mosher "did fail, neglect or refuse to make any return or declaration required for the **employer's withholding tax for the 2008 tax period(s)**," in violation of Kettering Codified Ordinances 191.12(A)(1), a first-degree

misdemeanor.[1]   (Emphasis sic.)   The affiant for the complaint was Marcy Bare.[2]   At the bottom of the complaint was a summons for Mosher to appear at the Kettering Municipal Court on August 12, 2011.   The complaint and summons were sent to Mosher by certified mail on July 13, 2011, the day the complaint was filed.

{¶ 4} According to the evidence at the hearing on Mosher's motion to dismiss, Steven Katchman represented Mosher in 2011 in connection with a foreclosure action related to Mosher's business's real estate.   Katchman's involvement was limited in that he primarily sought to "strike a deal where the lienholders all agreed upon a sale price that was pending that would allow the property to sell and avoid foreclosure."   Katchman stated that he reached out to a number of creditors who had liens against the property.

{¶ 5} On August 17, 2011, Katchman faxed correspondence to Marcy Bare at the City of Kettering, stating that he had been retained by Mosher regarding "City taxes/Edward Mosher."   Katchman expressed his understanding "that there are outstanding city taxes due and owing of approximately $4,800."   Katchman indicated that there was a bona fide buyer for the business property, but the secured and unsecured debts exceeded the value of the property.   Katchman wrote, "The anticipated sale cannot pay all claims at 100%.   As a result, my client, in [an] effort to go forward with the sale, is offering the City of Kettering payment of $3,000.00   Acceptance of this payment would cause the City of Kettering's tax claim to be settled in full."

---

[1] It is unclear what occurred on April 25, **2011** that created an alleged violation of Kettering Codified Ordinances 191.12(A)(1) for the **2008** tax year.

[2] Bare's position with the City was not listed on the complaint or clarified at the hearing on the motion to dismiss.   In its decision, however, the trial court stated that Bare was then-director of the City of Kettering Tax Department.

{¶ 6} Katchman's letter did not reference a criminal case, by case number or otherwise. Katchman testified that the intent of the letter was to request a discount of the tax liability so the sale of the business property could go through. He stated that he made this offer with his client's approval. Katchman testified that the understanding was that the payment would not occur until the property was sold.

{¶ 7} On August 26, 2011, the Kettering prosecutor responded to Katchman's correspondence. The prosecutor stated, "We accept the officer [sic] of $3,000.00 to settle all claims for the above-referenced case. Please contact me to schedule payment and conclusion of this case." Above the salutation, the prosecutor's correspondence indicated that the case referenced "City of Kettering v. Edward Mosher" and "Kettering Municipal Court Case No. 11CRB01415."

{¶ 8} The online docket reflects, and the parties agree, that the complaint and summons were returned unclaimed on December 15, 2011. The record reflects that no further attempts at service were made.

{¶ 9} Katchman withdrew from his representation in the summer of 2012. At that point, the property had not sold due to the lack of agreement by all interested parties. Katchman stated that he took no further action regarding Mosher's debt to the City of Kettering for employer withholding taxes.

{¶ 10} On cross-examination, Katchman testified that he did not represent Mosher in the City's criminal case against Mosher and did not enter an appearance in the criminal case. Katchman stated that he does not do criminal defense work, and that his concern was the Kettering Tax Department's lien, which was one of several liens against the property at issue.

{¶ 11} On November 25, 2015, after the attempted sale of the property had failed, Mosher filed for Chapter 7 bankruptcy. The City received notice of the bankruptcy action. Bankruptcy filings indicate that Mosher resided at the same residence identified on the criminal complaint. The filings further reflect that Mosher received a bankruptcy discharge on March 29, 2016, and the bankruptcy case was terminated on May 24, 2016, six months after it was filed.

{¶ 12} Katchman did not represent Mosher in the bankruptcy action. Katchman testified that he had no knowledge of what occurred in the bankruptcy proceeding or with the tax lien after his representation of Mosher ended.

{¶ 13} On January 29, 2018, a "Notice Setting Date" was filed in this criminal case, indicating "ARRAIGNMENT CONTINUED REQ DEFT" and scheduling Mosher's arraignment for February 26, 2018. The record does not include a request for a continuance by Mosher, and this notice is the second document in the record, preceded only by the 2011 complaint.

{¶ 14} The arraignment was held on February 26, 2018. Mosher appeared with counsel, pled not guilty, and signed a written waiver of his speedy trial rights.

{¶ 15} On March 30, 2018, Mosher moved to dismiss the charge on the ground that the City had failed to commence prosecution within the time required by R.C. 2901.13. Mosher stated that a single attempt at service was made in July 2011, and that service was unsuccessful. He argued that "[a] single attempt at service by certified mail over the court of over six (6) years does not constitute 'reasonable diligence' as required by R.C. 2901.13." Mosher stated that he did not know why certified mail service was unsuccessful, as he had lived continuously at his residence since 1996, and that he did

not learn of the charge until he was recently summoned to court on an unrelated traffic matter.   The trial court scheduled a hearing on the motion for May 22, 2018.

{¶ 16} In advance of the hearing, the City subpoenaed Katchman.   Katchman moved to quash the subpoena, indicating that he had a scheduling conflict and questioning whether he had any relevant information.   The record does not include a decision on Katchman's motion, but Katchman appeared for the hearing and testified as the sole witness.[3]   On June 1, 2018, the trial court overruled the motion to dismiss, concluding that the City had exercised reasonable diligence and that the prosecution commenced on the date the summons was originally issued (July 13, 2011).

{¶ 17} On June 13, 2018, Mosher withdrew his speedy trial waiver, and the trial court scheduled Mosher's trial for June 25, 2018.   On that date (June 25), Mosher pled no contest to an amended charge of disorderly conduct, a fourth-degree misdemeanor, and he was sentenced as described above.

{¶ 18} Mosher appeals from his conviction, raising four assignments of error.   We find the first assignment of error, related to the statute of limitations, to be dispositive. Accordingly, the remaining assignments of error are overruled as moot.

## II. Statute of Limitations

{¶ 19} In his first assignment of error, Mosher claims that the trial court erred in overruling his motion to dismiss on statute of limitations grounds.

### A.   Applicable Law

---

[3] At the beginning of the hearing, Mosher's counsel made a motion in limine, asking that "any attorney-client privileged information be excluded from the testimony during the time which Mr. Katchman represented Mr. Mosher."   The trial court responded that "we'll rule on that as the need arises."

**{¶ 20}** "[A] motion to dismiss 'tests the sufficiency of the indictment [or complaint], without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.' " *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 18 (2d Dist.), quoting *State v. Patterson*, 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (2d Dist.1989). We review de novo a trial court's decision on a motion to dismiss. *Fields* at ¶ 19; *State v. Miles*, 2018-Ohio-4444, __ N.E.3d __, ¶ 7 (2d Dist.).

**{¶ 21}** "The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges." *State v. Knox*, 8th Dist. Cuyahoga No. 107414, 2019-Ohio-1246, ¶ 33, citing *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). "Generally, statutes of limitations begin to run when the crime is complete." *State v. Swartz*, 88 Ohio St.3d 131, 133, 723 N.E.2d 1084 (2000), citing *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The City's complaint alleges that, on or about April 25, 2011, Mosher "did fail, neglect or refuse to make any return or declaration required for the employer's withholding tax for the 2008 tax period(s)," in violation of Kettering Codified Ordinances 191.12(A)(1) occurred.

**{¶ 22}** Kettering Codified Ordinances 191.12(D) sets forth the time limits for a prosecution under R.C. 191.12(A). It provides:

All prosecutions under this section shall be commenced within three (3) years after the commission of the offense, except that in the case of fraud, failure to file a return, or the omission of twenty-five percent (25%) or more of income required to be reported prosecutions may be commenced within six (6) years after the commission of the offense.

The language of Kettering Codified Ordinances 191.12(D) mirrors the language of R.C. 718.12(B), which establishes the statute of limitations for "[p]rosecutions for an offense made punishable under resolution or ordinance imposing [a municipal] income tax."

{¶ 23} R.C. 2901.13, the general statute of limitations for criminal prosecutions, addresses when a prosecution is commenced. It states:

> A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.

R.C. 2901.13(F). R.C. 2901.13 identifies circumstances when the period of limitations is tolled, but there is no evidence that any of those circumstances applies in this case.[4]

---

[4] The trial court found that the filing of Mosher's bankruptcy case operated as an automatic stay of the City's criminal case. Under 11 U.S.C. 362(b)(1), the automatic stay does not apply to the "commencement or continuation of a criminal action or proceeding against the debtor." However, federal courts are divided as to whether section 362(b)(1) operates as an absolute exception or whether section 362(b)(1) is inapplicable when the primary motivation of the criminal proceeding is to collect a pre-petition debt. *Compare, e.g., In re Storozhenko*, 459 B.R. 697, 705-07 Bankr.E.D.Mich.2011) (Section 362(b)(1) applies even if the primary or sole motive in pursuing a criminal proceeding is "to pressure or force the [d]ebtor into paying a pre-petition debt") with *In re Dovell*, 311 B.R. 492, 494 (Bankr.S.D.Ohio 2004) ("The exception to the automatic stay set forth in 11 U.S.C. § 362(b)(1) is inapplicable where the criminal proceeding is initiated for the purpose of collecting a debt."). We need not weigh in on this question, as our conclusion in this case is not affected by the six-month period when Mosher's bankruptcy case was pending.

{¶ 24} "The burden is upon the state to show prosecution was timely commenced. Once a warrant is issued, it must be executed by either an arrest or summons using reasonable diligence in compliance with Crim. R. 4(D)." (Citations omitted.) *State v. Pannell*, 2017-Ohio-4286, 92 N.E.3d 280, ¶ 18 (5th Dist.).

{¶ 25} Crim.R. 4(D)(3) addresses service of summons. It provides, in relevant part:

Summons may be served upon a defendant who is an individual by delivering a copy to the defendant personally, or by leaving it at the defendant's usual place of residence with some person of suitable age and discretion then residing therein, or, except when the summons is issued in lieu of executing a warrant by arrest, by mailing it to the defendant's last known address by United States certified or express mail with a return receipt requested or by commercial carrier service utilizing any form of delivery requiring a signed receipt. When service of summons is made by United States certified mail or express mail it shall be served by the clerk in the manner prescribed by Civ.R. 4.1(A)(1)(a). When service of summons is made by a commercial carrier service, it shall be served in the manner prescribed by Civ.R. 4.1(A)(1)(b). * * *

### B. The Trial Court's Decision

{¶ 26} In its decision, the trial court noted that the burden was on the prosecution to show that its action was timely commenced, and that the City was required to use reasonable diligence to execute the summons on a criminal complaint. The trial court also discussed various statutes of limitations. Mosher had raised R.C. 2901.13(A)(1),

which sets forth a general two-year statute of limitations for misdemeanors other than minor misdemeanors. The trial court noted that R.C. 718.12 and Kettering Codified Ordinance 192.19[5] set out limitations periods for tax cases, which included a six-year statute of limitations for certain criminal violations. The court concluded that the City commenced its action against Mosher within either limitations period.

**{¶ 27}** The trial court made the following findings in reaching its conclusion:

In the case at bar, the parties had reached an agreement as to the resolution of the case within seven weeks of the charge being filed against Defendant. Through no fault of the City, the originally anticipated real estate transaction closing date of 31 August 2011 came and went without the sale of the property.

The City had already agreed to the terms proposed by Defendant for the resolution of the criminal case. The City stood ready to resolve the case at such time as Defendant was prepared to resolve the case. It is not clear what Defendant believes the City should have done in addition to these steps already taken by the parties within seven weeks of the criminal case filing date.

Theoretically, the City could have requested an arrest warrant and arrested Defendant on the charge. However, with an agreement in place between Counsel, such action would certainly have appeared inappropriate – or even vengeful on the City's part.

---

[5] Kettering Codified Ordinance Chapter 191, not 192, applies for tax years 2015 and earlier.

There were other possible alternatives. The Prosecutor could have requested another attempt at service by U.S. Mail or Court Bailiff. Attorney Katchman could have been asked to formally accept service for Defendant and file a notice of appearance in the criminal case. The Prosecutor could have requested that the Court schedule a hearing on the case.

However the Court notes that in August 2011 the Prosecution had every reason to believe the Defendant had been served, as Attorney Katchman had contacted the City to address the tax issue shortly after summons was mailed by the Clerk of Court to Defendant.

It was not until December 2011 that USPS provided any notice of "unclaimed" delivery to the Clerk. It would have been December 2011 at the earliest when the Prosecutor could have had some indication that the docket did not reflect service of summons via certified U.S. mail. By that time, the parties had spoken, reached an agreement and the City was waiting for Defendant to offer a date for resolution of the case.

Evidence presented at hearing was undisputed in demonstrating that the parties had discussed the pending case and mutually agreed to a resolution of the matter in full. In so doing, the City more than met its obligation to exercise reasonable diligence. ORC 2901.13(F).

It is doubtful any of the parties anticipated the lengthy litigation that would eventually engulf the property and deprive Defendant of any means to voluntarily settle his debts with his various creditors and resolve by agreement his pending criminal case with the City. Nor could they have

foreseen the automatic stay required by Defendant's subsequent bankruptcy filing.

Defendant argues in the memorandum attached to his motion that prior to the date he was stopped for a traffic violation in January 2018 "… Mr. Mosher was unaware of this charge." Defendant offered no evidence at hearing to support this claim.

The Court finds that the testimony of Attorney Katchman proved just the opposite: Defendant was aware of the criminal charge. Defendant retained Attorney Katchman to help resolve the criminal case, assist with the sale of the business property and negotiate with various creditors to resolve outstanding debts.

Defendant now argues that the City's effort in engaging in good faith negotiations to reach a resolution of the case with Defendant's attorney and agreeing to wait until a time of Defendant's choosing to resolve the case entitles Defendant to a dismissal of the charge.

As explained by the Supreme Court of Ohio in *State v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, 1999-Ohio-408, 85 Ohio St.3d 582, 586, 709 N.E.2d 1192, 1195:

> The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions. This "limitation is designed to protect individuals from having to defend

themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." Additionally, such a time limit has the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity. We recognized these purposes in *Hensley*, 59 Ohio St.3d at 138, 571 N.E.2d at 714, where we found that **the intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct**. We stated, " 'The rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence,' " quoting the Ohio Legislative Service Commission comment to R.C. 2901.13. [Emphasis added]

Based upon the evidence presented, the Court finds that the City did exercise reasonable diligence and for that reason the prosecution of the case was commenced on the date the summons was originally issued. ORC 2901.13(F).

The date of original issue was 13 July 2011, which was within both the six year statute of limitation set out in ORC 718.12 and also the shorter two year statute of limitation argued by Defendant under ORC 2901.13.

(Citations omitted; emphasis added by trial court.)

**C. Review of Trial Court's Decision**

{¶ 28} Upon review of the record, we conclude the trial court erred in denying Mosher's motion to dismiss on statute of limitations grounds.

{¶ 29} Initially, we find that the trial court made factual findings that were not supported by the record. At one point in its decision, the trial court found that Mosher "retained Attorney Steven C. Katchman to represent Defendant in regard to a complex business matter," a finding that was supported by Katchman's testimony. The trial court later found, however, that Mosher retained Katchman "to help resolve the criminal case" and that "the parties reached agreement as to the resolution of the case within seven weeks of the charge being filed against Defendant. * * * [When the closing did not occur,] the City had already agreed to the terms proposed by Defendant for the resolution of the criminal case."

{¶ 30} Katchman's testimony explicitly stated that he did not engage in criminal defense work, that he was not involved in Mosher's criminal matter, and that he was hired by Mosher solely to facilitate the sale of the business property. Katchman stated that his concern was to get the liens resolved, and the City of Kettering had a lien on the property due to a tax debt. When asked if settling the tax debt would have resolved the criminal case, Katchman responded, "I can't answer that because I wasn't engaged in the, in the criminal aspects here. I was engaged from the civil perspective of trying to get these liens paid and satisfied."

{¶ 31} Katchman's correspondence to Bare does not reflect an offer to resolve the criminal tax case. Katchman's letter did not mention, in any respect, the criminal case, and he expressly wrote that, "my client, *in [an] effort to go forward with the sale*, is offering

the City of Kettering payment of $3,000.00. Acceptance of this payment would cause the City of Kettering's *tax claim* to be settled in full." (Emphasis added.) Katchman's letter reflected an intention to resolve the civil tax debt, not the criminal prosecution. We further note that Kettering Codified Ordinances 191.16 authorized the Tax Manager, i.e., Bare, to enter a compromise agreement with a taxpayer.

{¶ 32} The trial court further found that the evidence "was undisputed in demonstrating that the parties had discussed the pending case and mutually agreed to a resolution of the matter in full." There is no evidence in the record to support a finding that the parties engaged in any negotiations beyond Katchman's correspondence and the prosecutor's response. Katchman was the only witness who testified for either side; no one from the City testified. Moreover, given Katchman's testimony that he was concerned only with the sale of the property and not the criminal matter, there was no evidence that Katchman had discussed the criminal case with the prosecutor or Mosher.

{¶ 33} A person's conduct may result in criminal liability, civil liability, neither, or both. There are qualitative differences between civil and criminal proceedings, such as differences in the burden of proof, trial procedure, discovery, evidence, and constitutional safeguards. *Walden v. State*, 47 Ohio St.3d 47, 51, 547 N.E.2d 962 (1989). In addition, "[i]t is not the victim's interests that are being represented in a criminal case, but rather those of the people of the State of Ohio," or, in this case, the City of Kettering. *State v. Williams*, 7th Dist. Mahoning No. 09 MA 11, 2010-Ohio-3279, ¶ 32; *see also, e.g., State v. Hughes*, 2019-Ohio-1000, __ N.E.3d __, ¶ 12 (8th Dist.). While the City has a civil interest in receiving payment on Mosher's tax debt, its prosecution addressed Mosher's alleged violation of Kettering Codified Ordinances 191.12(A)(1); the prosecution was for

failure to file a return or declaration, not failure to pay, and the prosecution could have proceeded regardless of whether the tax debt was settled. Mosher's offer to resolve the tax debt was not necessarily coextensive with an offer to resolve the criminal matter.

{¶ 34} In conjunction with its findings that Katchman represented Mosher in the criminal matter and that the prosecutor believed that the matter had been resolved, the trial court found that the City did not need to take additional steps to effectuate service of the summons. We agree that, in August 2011, the prosecutor could have reasonably believed that Mosher had been served with the summons. The prosecutor had not yet learned that the summons was unclaimed, and the City had received correspondence from Mosher's counsel related to the tax debt.

{¶ 35} However, once the prosecutor learned in December 2011 that the complaint and summons had been returned as unclaimed, the City was on notice that its attempt at service was unsuccessful and that service was still required to commence the prosecution. At that juncture, the prosecutor had a duty to exercise reasonable diligence to ensure that Mosher was served with the summons, if the prosecutor wished to continue the prosecution of Mosher.

{¶ 36} Even assuming, as the trial court found, that Mosher knew of the pending criminal action, a defendant's actual knowledge of the criminal complaint, alone, is insufficient to commence a criminal action. As stated in R.C. 2901.13(F), a prosecution is not commenced upon issuance of a summons, unless reasonable diligence is exercised to execute the same, and Crim.R. 4(D) details service of a summons upon a defendant. (The trial court suggests that the prosecutor could have asked Katchman to formally accept service of summons for Mosher, but we find no authority allowing counsel

to accept service on a defendant's behalf.)

{¶ 37} The trial court emphasized that the parties had already agreed to settlement terms for the criminal case, and thus the City "more than met its obligation to exercise reasonable diligence." Even if the parties had reached an agreement on the criminal charge, we disagree with the trial court that an anticipated settlement relieved the State of its responsibility to commence the prosecution formally. The terms of the settlement agreement had not yet been performed when the prosecutor learned that the complaint and summons had been returned -- the assumed sale of Mosher's business property had not occurred, no money had been paid to the City, and the complaint had not been dismissed. Under these circumstances, the prosecutor would have acted reasonably by attempting to serve the summons again; such action was necessary to commence the case and preserve the City's right to pursue the prosecution if the anticipated settlement never materialized.

{¶ 38} Finally, the fact that Mosher had counsel could have facilitated, not impeded, the City's ability to attempt service again. If there were a question as to the location of Mosher's residence, the City could have communicated with Katchman regarding the situation. Regardless, the City received documents from Mosher's bankruptcy action, which reflected that Mosher resided at the same home listed on the 2011 complaint. There is nothing in the record to suggest that the City could not have located Mosher if it had attempted to do so.

{¶ 39} We therefore conclude that the City failed to exercise reasonable diligence to execute the summons. The City alleged that Mosher violated Kettering Codified Ordinances 191.12(A)(1) on or about April 25, 2011. The City sent the summons by

certified mail in July 2011, but made no further effort to serve Mosher after the summons was returned as unclaimed in December 2011. No action was taken in the case until January 29, 2018, six years and nine months after the alleged offense.

{¶ 40} Even assuming that the six-year statute of limitations applies and that the City could not commence an action during the pending of Mosher's bankruptcy case, the prosecution proceeded more than six-years after the commission of the offense. Accordingly, the trial court erred in concluding that the City's prosecution was timely commenced.

{¶ 41} Mosher's assignment of error is sustained.

### III. Conclusion

{¶ 42} In summary, Mosher's offense allegedly occurred on April 25, 2011. On July 13, 2011, the City filed its complaint and sent the summons and complaint by certified mail, but the complaint and summons were returned unclaimed in December 2011. No additional attempts at service were made; Mosher was not arrested on the charge. Mosher was arraigned on February 26, 2018. With the record before us, the City failed to exercise reasonable diligence to commence the prosecution, and Mosher's prosecution was ultimately commenced after the statute of limitations had expired.

{¶ 43} The trial court's judgment will be reversed, and Mosher's conviction will be vacated.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

John D. Everett
Brian D. Brennaman
Hon. James F. Long